# In the United States Court of Federal Claims

## (Pro Se)

|  |  |  |
|---|---|---|
| SCOTT D. REDMOND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22-60C |
| v. | ) | (Filed: February 1, 2022) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Scott D. Redmond*, Pro Se, San Mateo, CA.

*Ioana Cristei*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC.

### OPINION AND ORDER

### BACKGROUND

### I.     Preliminary Matters

On January 13, 2022, Plaintiff, proceeding pro se, filed a complaint alleging violations of the Federal Tort Claims Act, citing 28 U.S.C. §§ 1346(b), 2672, 2679, and seeking damages, costs, fees, and declaratory relief. See Compl. at 1–2, ECF No. 1. Plaintiff's complaint was unsigned and filed under the name "John Doe." Id. at 1. Accordingly, the Court instructed Plaintiff that he should caption all future filings in accordance with Rule 10(a) of the Rules of the Court of Federal Claims ("RCFC"), which provides that "[t]he title of the complaint must name all the parties," and that all other pleadings must "nam[e] the first party on each side." See Order at 2, ECF No. 6.[1]

Shortly thereafter, the Clerk received Plaintiff's submission, entitled "Plaintiff's Name Request And Affidavit," requesting that his name be removed from "all case records" and that

---

[1] The Court also ordered Plaintiff to either pay $402.00 in fees—a $350.00 filing fee plus a $52.00 administrative fee—or request authorization to proceed without prepayment of fees by submitting a signed application to proceed in forma pauperis ("IFP"). Order at 2 (noting that Plaintiff submitted the IFP form of another court). That same day, the Clerk received Plaintiff's Court of Federal Claims IFP application form. ECF No. 7. For the purpose of dismissing the case, Plaintiff's application to proceed in forma pauperis is **GRANTED**.

the Clerk "correct the text to 'DOE 1' on all future publications or documents," and alleging that Plaintiff "has been attacked in the past as a whistle-blower and threatened with further bodily harm over this case."

The Clerk is directed to **FILE** Plaintiff's submission as a motion for leave to proceed under the pseudonym "John Doe." However, as explained in the Court's prior Order, "[t]he use of pseudonyms in a complaint is contrary to" the requirements of RCFC 10(a), and the Court will accordingly allow a party "to proceed anonymously only where unusual circumstances justify concealing [the] party's identity." Whalen v. United States, 80 Fed. Cl. 685, 691 (2008) (quoting Wolfchild v. United States, 62 Fed. Cl. 521, 552 (2004)); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189 (2d Cir. 2008) (recognizing "a limited number of exceptions to the general requirement of disclosure") (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 685 (11th Cir. 2001)). Plaintiff has failed to demonstrate that his need for anonymity outweighs the "the general presumption that parties' identities [will] be available to the public and the likelihood of prejudice to the opposing party." Boggs v. United States, 143 Fed. Cl. 508, 511 (2019) (quoting Whalen, 80 Fed. Cl. at 691); see also Baystate Techs., Inc. v. Bowers, 283 F. App'x 808, 810 (Fed. Cir. 2008) (per curiam) (noting the "presumption of public access to judicial records"). Accordingly, Plaintiff's motion to proceed under a pseudonym is **DENIED**.

Also submitted to the Clerk was a one-page document printed with the line "Motion To Request FBI 302 Reports,"[2] and two submissions titled "New Evidence" and "New Evidence Published In National News Confirming RICO Violations," dated January 26 and 27, 2022, respectively, which consist of news articles published by The Daily Mail and Bloomberg Businessweek and purport to "verif[y] the fact that Defendants regularly hire assassins that have led to the murder of over 32 persons in this case," and allegedly confirm "that United States public officials knowingly and actively participate in an organized crime, RICO-violating 'Enterprise' known covertly as the 'Silicon Valley Cartel.'" The Court construes these submissions as motions to file the documents therein as additional exhibits in support of Plaintiff's complaint. The Clerk is therefore directed to **FILE** these submissions.

The Court is also in receipt of Plaintiff's submission, titled "Non Bias Validation Request And Affidavit," requesting that the Court provide assurances that he will receive "a fair hearing." Plaintiff cites 28 U.S.C. § 144, "Bias or prejudice of judge." That statutory provision, however, applies only to "a district court." See 28 U.S.C. § 144.[3] The Court of Federal Claims is not a district court. Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); see also Lightfoot

---

[2] "Typically referred to as a 302," this is "[t]he form that the [FBI] uses to memorialize an interview." See FBI's Interview Report Form FD-302, Practical Law Glossary Item w-015-5755.

[3] Specifically, Section 144 states that:
> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144.

v. Cendant Mortg. Corp., 137 S. Ct. 553, 563 (2017) (distinguishing between "the Court of Federal Claims" and "the federal district courts"). The provision on which Plaintiff relies is thus inapplicable, and his motion is **DENIED**.

Finally, the Court turns to Plaintiff's "Motion for Court Provided Attorney and Request [Department] of Justice to Join Case." Motion to Appoint Counsel at 1 (arguing that counsel should be appointed "due to extenuating circumstances including the public-interest nature of this anti-corruption case and the extensive service to nation and community by Plaintiff" and explaining that he has not been able to secure a law firm to represent him), ECF No. 10. Plaintiff cites Gideon v. Wainwright, which held that indigent state criminal defendants are entitled to counsel under the Sixth Amendment to the United States Constitution. 372 U.S. 335, 344 (1963) (recognizing the "obvious truth" that, "in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him"). That provision is inapplicable to Plaintiff's civil claim against the federal government.

Further, although 28 U.S.C. § 1915(e)(1) provides that this Court "may request an attorney to represent any person unable to afford counsel," this civil right "is highly circumscribed, and has been authorized in exceedingly restricted circumstances." Lariscey v. United States, 861 F.2d 1267, 1270 (Fed. Cir. 1988); see also Washington v. United States, 93 Fed. Cl. 706, 709 (2010) (providing that "only in civil cases that present an extreme hardship to petitioner are courts empowered to cause legal assistance to be provided"). Such "extreme circumstances" are not present here. Washington, 93 Fed. Cl. at 708; see also Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C., 452 U.S. 18, 26–27 (1981) (holding "that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty"); Omran v. United States, 629 Fed. App'x 1005, 1008 (Fed. Cir. 2015) ("With only monetary compensation potentially at stake, there is no private interest, government interest or risk of erroneous decision here strong enough to overcome 'the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom.'" (quoting Lariscey, 861 F.2d at 1270)). Accordingly, Plaintiff's motion for the Court to request an attorney, ECF No. 10, is **DENIED**.

## II.    The Complaint

In his complaint, Plaintiff claims that he has been subject to "reprisal for his whistle-blowing and his assistance to law enforcement," which he alleges was "sponsored by public officials who were employees and contractors of [the United States]." Compl. at 5 (asserting that the United States, through various federal agencies, has "spent over $30 million dollars [sic] in fees and services contracting and executing attacks on Plaintiff"). In addition to a bevy of tort claims alleged against the United States, Plaintiff asserts claims for breach of contract and patent infringement. The bulk of Plaintiff's complaint and the exhibit submitted in support thereof, as well as the two supplemental exhibits titled "New Evidence," consist of links to online news articles; copies of news articles; and lengthy, uncited quotes from news articles. See generally Compl. at 7–23; Compl., Ex. 1 ("Political Corruption Case Overview – Evidence Package One"), ECF No. 1-2. Plaintiff seeks "[a] declaration pursuant to 28 U.S.C. §§ 2201 and 2202 and 5 U.S.C. § 706(2)(B) that the denial of [his] applications was unlawful,"

"compensatory and injunctive relief directing" the government to approve a loan application, damages, "including any punitive or exemplary damages claimed, in the precedent amounts per past related cases, per the reasons claimed herein," and costs and fees. Id. at 60.

For the reasons set forth below, the Court has determined that it lacks subject-matter jurisdiction over any of Plaintiff's claims, and the case will therefore be dismissed.

## DISCUSSION

Jurisdiction is a threshold matter, Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998), and the Court has an independent obligation to satisfy itself of its jurisdiction, Arbaugh v. Y&H Corp., 546 U.S. 500, 506–07, 514 (2006). As such, the Court may raise the issue of subject-matter jurisdiction on its own at any time without a motion from a party. Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004); see also Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3); see also Arbaugh, 546 U.S. at 506–07, 514 (stating that courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party"). And while it is well established that complaints filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), even pro se plaintiffs must persuade the Court that jurisdictional requirements have been met, Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 Fed. App'x. 860 (Fed. Cir. 2004); Zulueta v. United States, 553 Fed. App'x. 983, 985 (Fed. Cir. 2014) ("the leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements" (citation omitted)).

The Tucker Act grants the Court of Federal Claims the power "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). That statute is, however, solely jurisdictional, and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. Cabral v. United States, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005)). Plaintiff has failed to plausibly allege any claims over which this Court could exercise jurisdiction.

Plaintiff's first allegation is that he "entered a valid and enforceable contract" with the United States "for the performance of services," Compl. ¶ 193, and that the government "breached the material portion and express terms of [that] contract," id. ¶ 199. Plaintiff cites the Department of Energy's Advanced Technology Vehicles Manufacturing incentive program, a loan program established by section 136 of the Energy Independence and Security Act of 2007, id. ¶ 192 (citing 42 U.S.C. § 17013), but fails to identify any existing contract (or loan agreement) between himself and the government, see id. at 20 (asserting without citation or

4

explanation that the "United States Congress had awarded PLAINTIFF, and his team, a commendation, and a multi-million-dollar federal contract to build America's energy 'back-up' plan").

Although "[a] non-frivolous allegation that a contract exists between a plaintiff and the United States is sufficient to invoke the subject matter jurisdiction of [this] Court," dismissal for lack of subject-matter jurisdiction is nevertheless proper where "the claim is 'wholly insubstantial and frivolous.'" Ibrahim v. United States, 799 F. App'x 865, 867 (Fed. Cir. 2020) (quoting Lewis v. United States, 70 F.3d 597, 602–04 (Fed. Cir. 1995)). Further, contract claims in this court must be supported by well-pleaded allegations going to each element of a contract. See Crewzers Fire Crew Transp., Inc. v. United States, 741 F.3d 1380, 1382 (Fed. Cir. 2014); RCFC 9(k) ("In pleading a claim founded on a contract . . . a party must identify the substantive provisions of the contract . . . on which the party relies.").

In the several hundred pages submitted to the Court, Plaintiff fails to allege any facts sufficient to show a contract with the United States, identify the terms of the contract or the provisions he claims have been breached, or otherwise set forth any nonfrivolous factual allegations from which the Court could plausibly conclude that Plaintiff had a contract with the United States. D&N Bank v. United States, 331 F.3d 1374, 1377 (Fed. Cir. 2003) (providing that "there needs to be something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights"). Accordingly, this claim must be dismissed.

Plaintiff also asserts a series of tort claims against the United States. See Compl. ¶¶ 202–08 (alleging that the government "has committed conversion" of unspecified personal property, which "was intentional and ha[d] the effect of denying or repudiating the Plaintiff's rights to the property"); id. ¶ 210 (claiming that the government has been unjustly enriched by its purported failure to fulfill a promise to pay "Plaintiff a salary of an average of $200,000.00 per year . . . in consideration for her [sic] exclusive work with working with the government" and that "Plaintiff did the work but was not compensated properly"); id. ¶¶ 222–55 (claiming that Plaintiff has been subject to "fraudulent misrepresentation" in relation to a purported loan application under the Advanced Technology Vehicle Manufacturing incentive program); id. ¶¶ 256–77 (claiming that the government committed the tort of fraudulent concealment in relation to that application); id. ¶¶ 279–82 (accusing the United States of the intentional or reckless infliction of emotional distress).

Each of these claims sounds in tort, and each is thus firmly outside the scope of the Court's jurisdiction. 28 U.S.C. § 1491(a)(1) (providing that the Court of Federal Claims has limited jurisdiction to consider "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort").

For the same reason, the Court lacks jurisdiction over Plaintiff's claims brought under 28 U.S.C. § 2680(h) (a provision of the Federal Torts Claims Act ("FTCA")), and those brought under the FTCA generally. See Compl. ¶ 287 (reiterating allegations of "breach of contract, unjust enrichment, fraudulent misrepresentation, fraudulent concealment, conversion of personal

property, infliction of emotional distress, and interference with a prospective economic opportunity" on the part of federal government officials); id. ¶ 284 (asserting that the "acts and events set forth above constitute negligent and wrongful acts and omissions of agents and employees of the U.S. Government," and include "negligent investigation, false imprisonment, abuse of process, conversion of personal property, infliction of emotional distress and interference with a prospective economic opportunity while acting within the scope of their offices and employment," and further that, "[b]ecause these acts and events were undertaken and caused by investigative and law enforcement agents or persons holding themselves out as law enforcement agents of the [government]," the government "is liable for all damages caused by such acts" pursuant to 28 U.S.C. § 2680(h)); see also id. ¶¶ 277–78 (repeating allegation under a separate cause of action).

It is well settled that this Court lacks the authority to hear claims brought under the FTCA which, by its terms, grants United States federal district courts exclusive jurisdiction to hear tort claims against the United States. 28 U.S.C. § 1346; see also 28 U.S.C. § 1491(a)(1); see also, e.g., Keene Corp. v. United States, 508 U.S. 200, 214 (1993) ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims . . . "); Sindram v. United States, 67 Fed. Cl. 788, 792 (2005) (noting that allegations of "wrongful conduct by governmental officials in their official capacity are tort claims over which the United States Court of Federal Claims does not have jurisdiction" (citing 28 U.S.C. § 1346(b))).

Finally, the Court considers Plaintiff's assertion that the government "has infringed and continues to infringe the claims of Plaintiff's issued patents under 35 U.S.C. § 271(a), either literally or under the Doctrine of Equivalents, by operating and using the patent process within the United States that is covered by the claims of the patents listed at [the United States Patent and Trademark Office website]." Compl. ¶ 291.

The Court of Federal Claims has exclusive jurisdiction for suits seeking damages as a result of infringement of a copyright or patent by the United States government. 28 U.S.C. § 1498(a). However, "actual copyright registration, or the denial of copyright registration, is required prior to bringing suit for copyright infringement." Jennette v. United States, 77 Fed. Cl. 126, 131 (2007); see also 17 U.S.C. § 411(a) (explaining that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"). Likewise, "section 1498 does not grant the Court of Federal Claims jurisdiction over a claim for alleged infringement of an unissued patent." Martin v. United States, 99 Fed. Cl. 627, 632 (2011) (citing 28 U.S.C. § 1498(a)). Plaintiff makes no attempt to point to a specific patent which he alleges the United States government has infringed, nor does he plausibly allege that he owns or has attempted to obtain either a copyright or a patent on which the United States could have infringed. Accordingly, the Court lacks jurisdiction over any claims Plaintiff might be asserting pursuant to 28 U.S.C. § 1498(b).

To the extent that Plaintiff seeks relief pursuant to 28 U.S.C. §§ 2201–02, see Compl. at 2, 60, this Court lacks jurisdiction to consider claims founded upon the Declaratory Judgment Act, which does not provide this Court with jurisdiction to decide cases for which there is no underlying claim for money damages, Nat'l Air Traffic Controllers Ass'n v. United States, 160

F.3d 714, 716–17 (Fed. Cir. 1998). Nor may it consider claims brought under the Administrative Procedure Act ("APA"), Compl. at 2, 60, which does not authorize an award of money damages, 5 U.S.C. § 702 (providing for judicial review of actions "seeking relief other than money damages"). Further, and in any event, it is well established that "[f]ederal district courts—not the Court of Federal Claims—are the proper fora for APA actions." Stroughter v. United States, 89 Fed. Cl. 755, 763 (2009).[4]

      Finally, although the Court may consider whether "it is in the interest of justice" to transfer a suit over which it lacks jurisdiction, 28 U.S.C. § 1631, it should not do so where "transfer would nevertheless be futile given the weakness of plaintiff's case on the merits." Faulkner v. United States, 43 Fed. Cl. 54, 56 (1999); see also Galloway Farms, Inc. v. United States, 834 F.2d 998, 1000 (Fed. Cir. 1987) ("The phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." (citing Zinger Constr. Co. v. United States, 753 F.2d 1053, 1055 (Fed. Cir. 1985))). Under this standard, the Court concludes that transfer is inappropriate in light of the fact that the conclusory allegations in the complaint before it are comprised of "legal points not arguable on their merits." Galloway Farms, 834 F.2d at 1000 (citations omitted).

## CONCLUSION

      Plaintiff has not established that this Court has jurisdiction over any of his claims. Accordingly, the case is **DISMISSED**. The Clerk shall enter judgment accordingly. The Clerk is further directed to **FILE** Plaintiff's submissions as exhibits in support of the complaint and as motions for recusal and to proceed under a pseudonym. Plaintiff's motion for recusal is **DENIED**, as is Plaintiff's request to proceed anonymously. Plaintiff's motion for the Court to appoint counsel, ECF No. 10, is **DENIED**.

      **IT IS SO ORDERED.**


                    s/ Elaine D. Kaplan
                    ELAINE D. KAPLAN
                    Chief Judge

---

[4] In his complaint and exhibits, Plaintiff also asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Compl. at 6–7; id. ¶ 184dd (asserting that "Plaintiff has filed federal RICO charge referrals in this matter with [the United States Department of Justice]"). However, "RICO is a criminal statute," and the Court of Federal Claims "lacks jurisdiction to entertain claims brought under a criminal statute." Trevino v. United States, 113 Fed. Cl. 204, 209 (2013). Instead, subject-matter jurisdiction over RICO claims is vested exclusively in federal district courts. See 18 U.S.C. § 1965(a) ("Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."); see also Stanwyck v. United States, 127 Fed. Cl. 308, 315 (2016) (explaining that "claims based on RICO and other criminal code provisions are not within our subject-matter jurisdiction.").